FILED
2024 Sep-23 PM 01:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JERALD MARSHALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 7:23-cv-01118-AMM** |
| | ) | |
| **SOCIAL SECURITY ADMINISTRATION, Commissioner,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF DECISION**

Plaintiff Jerald Marshall brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **REVERSES** and **REMANDS** the decision of the Commissioner.

## I. Introduction

On August 6, 2018, Mr. Marshall protectively filed an application for benefits under Title II of the Act, alleging disability as of August 1, 2018. R. 71–82, 151–52, 4851. Mr. Marshall alleges disability due to post-traumatic stress disorder ("PTSD") and irritable bowel syndrome ("IBS"). R. 72, 180. He has at least a high school

education and past relevant work experience as a police officer, tire builder, and massage therapist. R. 4865.

This case was before the Administrative Law Judge ("ALJ") on remand from the Appeals Council, R. 4976–79, pursuant to a remand from the United States District Court for the Northern District of Alabama. R. 4851, 4963–64. Mr. Marshall received an online video hearing before ALJ Sheila E. McDonald on September 8, 2022. R. 4851, 4877–903. On October 27, 2022, ALJ McDonald issued a decision, finding that Mr. Marshall was not disabled from August 1, 2018 through her date of the decision. R. 4848–67. Mr. Marshall was fifty-one years old at the time of the ALJ decision. R. 4865.

Mr. Marshall appealed to the Appeals Council, which upheld the decision of the ALJ on June 28, 2023. R. 4831–34. Thus, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On August 23, 2023, Mr. Marshall sought this court's review of the ALJ's decision. *See* Doc. 1.

## II. The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done "for pay or

profit." 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis

proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Mr. Marshall would meet the insured status requirements of the Act through December 31, 2023. R. 4851–52. Next, the ALJ found that Mr. Marshall "has not engaged in substantial gainful activity since August 1, 2018, the alleged onset date." R. 4853. The ALJ decided that Mr. Marshall had the following severe impairments: degenerative disc disease; status post anterior cervical discectomy and fusion; IBS; depression; PTSD; and obesity. R. 4853. The ALJ found that Mr. Marshall's hypertension, hyperlipidemia, obstructive sleep apnea, degenerative joint disease in the bilateral knees, and gastroesophageal reflux disease were non-severe because the ALJ found "that these impairments do not cause more than minimal limitations in the claimant's ability to perform basic work activities." R. 4854. Overall, the ALJ determined that Mr. Marshall "does not have

an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 4854.

The ALJ found that Mr. Marshall "has the residual functional capacity to perform light work" with certain limitations. R. 4856. The ALJ determined that Mr. Marshall could: frequently climb ramps and stairs; frequently stoop, kneel, crouch, and crawl; and occasionally be exposed to extremes of cold and full body vibration. R. 4856. The ALJ prohibited: exposure to hazards, including unprotected heights and dangerous machinery; and climbing ladders, ropes, or scaffolds. R. 4856. The ALJ found that Mr. Marshall would be able to understand, remember, and carry out simple instructions and tasks; could tolerate changes in the workplace that are infrequent and gradually introduced; and could have occasional work-related interaction with supervisors, co-workers, and the general public. R. 4856.

The ALJ determined that Mr. Marshall was "unable to perform any past relevant work" as a police officer, tire builder, and massage therapist. R. 4865.

According to the ALJ, Mr. Marshall was "a younger individual" "on the alleged disability onset date." R. 4865. Mr. Marshall has "at least a high school education." R. 4865. The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." R. 4865. Because Mr. Marshall's

"ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain whether there were a significant number of jobs in the national economy that Mr. Marshall was capable of performing. R. 4866. That expert testified that there were indeed a significant number of such jobs in the national economy, such as cleaner, photo copy machine operator, and marker. R. 4866.

Based on these findings, the ALJ concluded that Mr. Marshall was not under a disability as defined in the Act, from August 1, 2018, through October 27, 2022, the date of the decision. R. 4852, 4867. Mr. Marshall now challenges that decision.

## III. Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and

supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See id*. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV. Discussion – The ALJ's Evaluation of Mr. Marshall's Medical Opinion Evidence

Mr. Marshall argues that the ALJ's evaluation of Dr. Doreen Davis's medical opinion violated 20 C.F.R. § 404.1520c. Doc. 6 at 19–22. Specifically, Mr. Marshall criticizes the ALJ's characterization of Dr. Davis's role in Mr. Marshall's medical care. *Id.* at 20. Mr. Marshall argues that the "ALJ at best misstates the medical record

from the VAMC and fails to consider the extensive treatment notes from Dr. Davis spanning years of psychotherapy." *Id.* at 20–21.

The SSA has revised the applicable regulations related to medical opinion evidence. The SSA's new regulations, promulgated in 2017, do away with the hierarchy of medical opinions and the treating source rule. *See* 20 C.F.R. § 404.1520c(a). Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" for all claims filed on or after March 27, 2017. *Id*. And the ALJ "will articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions . . . in [the claimant's] case record." *Id.* § 404.1520c(b).

When evaluating the persuasiveness of the opinions, the ALJ considers these factors: (1) supportability, i.e., how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)"; (2) consistency with the evidence; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the nature of the relationship; (4) specialization; and (5) "[o]ther factors," such as the medical source's familiarity with the agency's policies and the evidence in the claim. *Id.* § 404.1520c(c). Supportability and consistency are the most important of the five factors, and an ALJ must "explain how [she] considered

the supportability and consistency factors for a medical source's medical opinions . . . in [her] . . . decision." *Id.* § 404.1520c(b)(2). The ALJ may explain how she considered the remaining factors, but she is not required to do so. *Id.* The ALJ is not required to use "magic words" or follow a particular formula to articulate her consideration of the factors. *See id.* § 404.1520c; *Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022).

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in her decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

"To the extent the ALJ commits an error," the court "will not reverse if the error did not affect the ALJ's ultimate determination." *Epps v. Soc. Sec. Admin.*, No. 22-13674, 2024 WL 20837, at *4 (11th Cir. Jan. 2, 2024). And, finding a single discrepancy does not undermine the ALJ's overall evaluation of the medical opinion or the ALJ's ultimate determination. *Id.* at *7. When misstatements of fact do not affect the ALJ's conclusion, they are harmless. *George S. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00063-RGV, 2022 WL 16706578, at *22 (N.D. Ga. Sept. 30, 2022).

Dr. Davis completed a Mental Residual Functional Capacity Questionnaire dated September 26, 2019. R. 4777–79. In her functional assessment of Mr. Marshall, Dr. Davis indicated that his estimated restriction of activities of daily living was moderate; his estimated degree of difficulty in maintaining social functioning was marked; his estimated deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely and appropriate manner (commonly found in a work setting) was marked; and Mr. Marshall would have four or more episodes of decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors). R. 4777–78. Dr. Davis also gave her opinion as to Mr. Marshall's ability to complete certain activities on a sustained basis, in a routine work setting. R. 4778. Dr. Davis opined that Mr. Marshall had a mild limitation with performing simple and repetitive tasks. R. 4778–79. Dr. Davis opined that Mr. Marshall had a moderate limitation with understanding, carrying out, and remembering instructions; and responding appropriately to customary work pressures. R. 4778. And, Dr. Davis opined that Mr. Marshall had a marked limitation with responding appropriately to supervision and co-workers; and performing complex or detailed tasks. R. 4778. Dr. Davis stated that the limitations have lasted or can be expected to last for twelve months or longer and provided November 2015 as the "earliest date that the description of symptoms

and limitations in this questionnaire applies." R. 4779. Dr. Davis responded affirmatively to these questions:

> Based on my observation and treatment of this patient, I believe this patient will experience symptoms, on a chronic basis, from his/her underlying medical condition(s) which could reasonably be expected to cause distraction from job tasks, or result in a failure to complete job tasks in a timely manner, for more than two hours during a typical 8 hour workday.
>
> Based on my observation and treatment of this patient, I believe this patient could be expected to miss more than three days of work each month as a result of his/her underlying medical condition(s).
>
> Based on my observation and treatment of this patient, I believe that he/she could not sustain work for eight (8) hours per day, five (5) days per week at any kind of job, even one that is seated most of the day.

R. 4779. Dr. Davis stated in the "Comments" section:

> Mr. Marshall's condition has worsened over time and is exacerbated by the demands of employment. The condition itself is unremitting and most effectively managed by limited exposure to triggers often associated with a work environment.

R. 4779.

Dr. Davis completed an additional Mental Residual Functional Capacity Questionnaire dated March 3, 2022. R. 5958–61. In her functional assessment of Mr. Marshall, Dr. Davis indicated that his estimated restriction of activities of daily living was moderate; his estimated degree of difficulty in maintaining social

functioning was moderate; his estimated deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely and appropriate manner (commonly found in a work setting) was marked; and Mr. Marshall would have four or more episodes of decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors). R. 5959. Dr. Davis also gave her opinion as to Mr. Marshall's ability to complete certain activities on a sustained basis, in a routine work setting. R. 5959–60. Dr. Davis opined that Mr. Marshall had a mild limitation with performing simple and repetitive tasks. R. 5960. Dr. Davis opined that Mr. Marshall had a moderate limitation with understanding, carrying out, and remembering instructions; responding appropriately to co-workers; and responding appropriately to customary work pressures. R. 5959. And, Dr. Davis opined that Mr. Marshall had a marked limitation with responding appropriately to supervision; and performing complex or detailed tasks. R. 5959–60. At the conclusion of this section, Dr. Davis remarked: "Mr. Marshall has PTSD . . . which is a chronic condition. It has a significant impact on him in numerous areas of functioning as indicated above." R. 5960. Dr. Davis stated that the limitations have lasted or can be expected to last for twelve months or longer and provided November 2015 as the "earliest date that the description of symptoms

and limitations in this questionnaire applies." R. 5960. Dr. Davis responded affirmatively to these questions:

> Based on my observation and treatment of this patient, I believe this patient will experience symptoms, on a chronic basis, from his/her underlying medical condition(s) which could reasonably be expected to cause distraction from job tasks, or result in a failure to complete job tasks in a timely manner, for more than two hours during a typical 8 hour workday.
>
> Based on my observation and treatment of this patient, I believe this patient could be expected to miss more than three days of work each month as a result of his/her underlying medical condition(s).
>
> Based on my observation and treatment of this patient, I believe that he/she could not sustain work for eight (8) hours per day, five (5) days per week at any kind of job, even one that is seated most of the day.

R. 5960. Dr. Davis stated in the "Comments" section:

> Mr. Marshall's condition is chronic and is exacerbated by the rigors and structure innate to employment. In a work environment, Mr. Marshall is at significantly higher risk of acute episodes of the condition which is both detrimental to himself and others.

R. 5960–61.

The ALJ considered Dr. Davis's medical opinions and discussed them in her residual functional capacity analysis, R. 4861–62, as follows:

> The claimant's record contains two opinion statements issued by Doreen Davis, Ph.D., on September 26, 2019, and March 3, 2022. Dr. Davis appears to be the moderator for group therapy engaged in by the claimant as noted in

> Exhibit 22F. Notably, the notes of this therapy appear to be generally a repeat of the prior sessions with few, if any, significant deviations from the prior sessions. As such, it is unclear whether Dr. Davis is in a position to accurately assess the claimant's mental condition as it does not appear from my review of the file that she had significant "one on one" time with the claimant and as such these limited notes do not provide sufficient basis upon which her assessments can be evaluat[ed]. In both statements, Dr. Davis notes that the claimant's "disabling" PTSD symptomology were present as far back as 2015 and yet the record notes that his PTSD was considered "mild" in 2017 (Exhibit 13F/52) and the claimant was still successfully engaged in employment activity in 2015 with no real reports of employment or vocational difficulty. Both statements appear to suggest a degree of impairment from a psychological perspective that would necessarily preclude the claimant from managing even the most basic daily activities which is clearly not the case. Perhaps more importantly, I note that the form provided consists of a series of questions which, save for a couple of questions, merely seek "yes" or "no" answers; as such the statements preceding are conclusory with limited probative value as these circled responses provide little narrative and are devoid of insight into the reasons behind the conclusions. As such there is very little probative value in these statements as there does not appear to be any objective determination regarding limitations but are rather designed to elicit a pre-determined response. For these reasons, I am only minimally persuaded by these assessments (Exhibits 20F and 37F).

Relatedly, when discussing Mr. Marshall's medical records, the ALJ stated that the "VA's treatment notes indicate a gap in mental healthcare treatment[]" and "the claimant was last seen in May 2019." R. 4857.

Mr. Marshall argues that the ALJ "misstates the medical record . . . and fails to consider the extensive treatment notes from Dr. Davis spanning years of psychotherapy." Doc. 6 at 20–21. *First*, Mr. Marshall disputes the ALJ's recitation that "Dr. Davis 'appears to be the moderator for group therapy' without 'significant "one on one" time with Mr. Marshall.'" *Id.* at 20. *Second*, Mr. Marshall disputes the ALJ's description of Dr. Davis's notes as "very limited" and finding those notes "do not provide sufficient basis upon which her assessments can be evaluat[ed]." *Id.* *Third*, Mr. Marshall argues the ALJ erred in concluding that the MRFC of Dr. Davis was "misleading" and "[t]he instructions clearly led the practitioners to provide a particular disabling response." *Id.* at 21. *Fourth*, Mr. Marshall argues that "despite ALJ's erroneous statements about his treatment record," Dr. Davis's opinion is "consistent with and supported by the other medical opinions contained within the record, as well as [her] clinic notes." *Id.*

The Commissioner states that "the ALJ may have misstated the record." Doc. 9 at 18. However, the Commissioner argues that "the ALJ did not discount Dr. Davis's responses solely on this basis, and the ALJ equivocated by stating her role was 'unclear.'" *Id.* The Commissioner also argues that Mr. Marshall "shows no lack of substantial evidence." *Id.* at 19.

On reply, Mr. Marshall argues that the "ALJ does not cite to medical records in her evaluation of the opinion evidence and in her summary of the record leaves

out o[r] disregards large portions of the record which conflict with her findings." Doc. 10 at 3. Mr. Marshall states that the ALJ only cites "psychological treatment notes from 2019, records dated years prior to the alleged onset date, and erroneously writes that there was a gap in mental health treatment." *Id.* at 4. Mr. Marshall highlights the individual and group therapy records "throughout the time period at issue" and reiterates that the ALJ "erroneously states that Dr. Davis did not provide individual therapy to Mr. Marshall despite extensive individual therapy notes from 2018 through 2022." *Id.*

As an initial matter, the ALJ "considered the medical opinion[] . . . in accordance with the requirements of 20 CFR 404.1520c." R. 4856. Additionally, she stated: "As for medical opinion(s) . . . , I cannot defer or give any specific evidentiary weight, including controlling weight, to any . . . medical opinion(s) . . . ." R. 4860. The ALJ articulated how persuasive she found Dr. Davis's opinions, as required by the regulations. R. 4862 ("I am only minimally persuaded by these assessments."); *see* 20 C.F.R. § 404.1520c(b). However, substantial evidence does not support her finding that it was "minimally" persuasive. *See* R. 4862.

The treatment notes referenced by the ALJ in her assessment of Dr. Davis's medical opinion, Exhibit 22F, include notes of group therapy sessions moderated by Dr. Davis. *See* R. 4812–17 (reflecting group therapy sessions on August 22, 2019, August 29, 2019, September 5, 2019, September 19, 2019, September 26, 2019, and

October 3, 2019); R. 4818–20 (reflecting group therapy sessions on August 1, 2019 and August 15, 2019). However, they also include two individual therapy sessions. R. 4811–12 (October 7, 2019 and noting Mr. Marshall "recently completed the Managing Emotions psychotherapy group"); R. 4817–18 (August 19, 2019). Although the ALJ stated that Dr. Davis's role was "unclear," a review of the medical records cited by the ALJ shows that Dr. Davis provided both individual and group therapy to Mr. Marshall.

Additionally, the ALJ omitted any reference to years of mental health treatment included in the record, and she made an affirmative misstatement of fact that Mr. Marshall last received mental health treatment in May 2019. R. 4857. The record reflects numerous individual therapy sessions between Dr. Davis and Mr. Marshall from to March 22, 2019 through March 31, 2022. R. 5456–57, 5461–63, 5477–79, 5486–88, 5498–99, 5533–34, 5559–60, 5578–79, 5629–30, 5667–68, 5679–80, 5683–84, 5694–95, 5700–01, 5709–10, 5733–35, 5782–83, 5805, 5819, 5825, 5988–90, 6036–38, 6078–79, 6093–94, 6484–85. Notably, the ALJ referenced medical records from the VA during this time, but she failed to acknowledge Mr. Marshall's mental health treatment. *See* R. 4858–60 (referencing cervical spine MRI, neck pain, and chronic pain management).

Under the applicable regulations, the ALJ was required to consider Dr. Davis's relationship with Mr. Marshall, including the nature of the relationship, the

length of the relationship, the frequency of examinations, and the extent of the treatment relationships. *See* 20 C.F.R. § 404.1520c(c). Although the ALJ was not required to explain how she considered this factor, here she did—by expressly stating that there was a gap in mental healthcare treatment, R. 4857, that Mr. Marshall was last seen in May 2019, R. 4857, that Dr. Davis's role was that of moderator of group therapy, R. 4861, and that it did not appear Dr. Davis "had significant 'one on one' time" with Mr. Marshall, R. 4861. However, these statements concerning Dr. Davis's treatment of Mr. Marshall are not supported by a review of the record as a whole. Thus, the ALJ's decision did not consider the medical evidence as a whole and broadly rejected evidence in the record. *See Jacobus*, 664 F. App'x at 776.

Additionally, it is not clear that the ALJ would have assigned the same persuasiveness to Dr. Davis's opinions if not for these errors. If the ALJ assigned a different level of persuasiveness to Dr. Davis's medical opinions, it arguably may have led to additional limitations in the residual functional capacity for the difficulties raised by Dr. Davis. These omissions are not harmless error. And, it is not this court's role to reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See Martin*, 894 F.2d at 1529. For these reasons, remand is warranted.

## V. Remaining Issues

Mr. Marshall also challenges the assessment of the opinions of other medical providers and the ALJ's evaluation of whether he meets or equals a Listed Impairment under 12.15. *See generally* Doc. 6. Rather than decide these issues, because this action is remanded to reconsider the opinions of Dr. Davis, the Commissioner is directed to reconsider the relevant medical evidence as a whole.

## VI. Conclusion

The ALJ's determination that Mr. Marshall is not disabled is not supported by substantial evidence. The Commissioner's final decision is therefore reversed and remanded to the Commissioner to conduct further proceedings consistent with this opinion. A separate order will be entered.

**DONE** and **ORDERED** this 23rd day of September, 2024.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE